UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:     CASE NO.

**IVEY TURNER HALL**     **14-12406**
    SECTION A
DEBTOR(S)     CHAPTER 13

## REASONS FOR DECISION

This matter came before the Court on Ivey Turner Hall's ("Debtor") Objection to Proof of Claim No. 2 filed by Standard Mortgage Corporation ("Standard").[1] Following the hearing on October 2, 2015, the Court ordered the parties to submit the following additional information:

> 1) Counsel for Standard Mortgage - proof of insurance payments made or outstanding amounts due for the period April 2015 through July 2015;
>
> 2) Counsel for Debtor - proof of Hazard and Flood Insurance, the amounts payable annually on the policies, confirmation from the insurance companies that the policies are current, and a copy of the declaration page naming Standard Mortgage Company as loss payee; and
>
> 3) Counsel for Debtor - the amount due for property taxes for 2015 and proof that the debtor has the ability to make the payment.[2]

The Court also gave the parties time to file additional briefs. Upon submission of the briefs, the Court took the matter under advisement.

**I. Findings of Fact**

On October 13, 2006, Debtor executed a promissory note and mortgage in favor of Standard. The collateral for the mortgage ("Mortgage") was 1720 Wellington Drive, Marrero, LA 70072, Debtor's principal residence ("the Property").

---

[1] P-90.

[2] P-100.

On June 8, 2012, Standard filed a Petition for Executory Process to foreclose on the Property, and an Order to seize and sell the Property by Sheriff's sale was entered on June 13, 2012.[3] The Order provides that Standard's claim is:

> the principal sum of $26,277.71 with 6% interest thereon from January 1, 2012 until paid, together with accumulated late charges, any additional amounts which petitioner has advanced or hereafter advances, as permitted by the Note and Mortgage, for taxes, insurance, assessments, repairs to and maintenance and preservation of the mortgaged property, together with reasonable attorney's fees on the total amount of principal, interest and all current and future advances, together with the costs of these proceedings.[4]

Standard purchased the Property at Sheriff's sale on January 16, 2013, for $1,991.00.[5] On January 18, 2013, Standard transferred the Property to Federal Home Loan Mortgage Corporation ("Federal") for $26,277.71.[6] Standard services Federal's loans.

On October 4 2013, Federal instituted an eviction proceeding against Debtor. Debtor filed a Motion to Rescind and Annul Judicial Sale ("Motion to Rescind") for insufficient service of process, which was denied by the State Court on July 29, 2014. Debtor filed a devolutive appeal of the Judgment denying the Motion to Rescind.

The eviction hearing was scheduled for September 9, 2014, at 9:00 a.m. Debtor filed a Voluntary Petition for Relief under chapter 13 of the Bankruptcy Code at 6:40 that morning, and the eviction hearing was cancelled.

---

[3] Exh. 1.

[4] *Id.*

[5] P-58, Exh. E. The deed was recorded in the Jefferson Parish conveyance records as Instrument Number 11307263 COB 3309 Page 478.

[6] P-58, Exh. 6. The Act of Cash Sale was recorded in the Jefferson Parish conveyance records as Instrument Number 11308004 COB 3309 Page 705.

Debtor listed the Property on Schedule A, noting that ownership was contested.[7] The scheduled value of the Property is $125,000.00, and the secured claim is scheduled as $32,500.00. Debtor filed a Chapter 13 Plan[8] ("Plan") proposing to pay arrearages to Standard. Standard and Federal objected to confirmation.[9] The Court has not yet ruled on confirmation.

Standard filed a Motion to Confirm the Absence of an Automatic Stay or Alternatively Retroactive Relief from the Automatic Stay and Ratification of Sheriff Sale.[10] This Court confirmed the absence of the automatic stay finding "that no automatic stay existed on September 9, 2014 or thereafter as to the [P]roperty ... because as of this date it does not comprise property of the estate."[11]

After negotiations, Debtor and Standard filed a Joint Motion and Order to Rescind Sale in State Court which was granted on July 14, 2015.[12] The State Court's Order rescinded the sale, reinstated Standard's liens, and provided that the Sheriff is "entitled to collect and receive his full costs and commission as though the sale were not rescinded." Once the sale was rescinded, Standard resumed servicing the loan.

---

[7] P-10.

[8] P-11, 28.

[9] P-23, 42.

[10] P-25, 41.

[11] P-72.

[12] Exh. 7.

Standard filed proof of claim no. 2 in Debtor's bankruptcy case on August 12, 2015, asserting a secured claim in the total amount of $54,642.54 with arrearages of $36,208.67. Debtor objects to Standard's claim.

On November 11, 2015, while this matter was under advisement, Debtor filed an Ex Parte Motion to Convert to Chapter 7 because Debtor no longer wishes to keep the Property.[13]

**II. Law and Analysis**

A properly filed proof of claim constitutes "*prima facie* evidence of the validity and amount of the claim."[14] Because Debtor has objected to Standard's proof of claim, it is Debtor's "burden to present enough evidence to overcome the *prima facie* effect of the claim"[15] At trial Debtor produced evidence sufficient to rebut Standard's claim. Because the Court finds that Debtor has met its burden of overcoming the *prima facie* effect of the claim, Standard must prove the validity of its claim by a preponderance of evidence.[16]

**A. Principal, Interest, and Attorney's Fees**

Debtor and Standard stipulated at the hearing that the principal and interest owed as of the petition date is $31,133.92. They also stipulated to $1,150.00 in attorney's fees.

**B. Late Charges**

Debtor disputes the late charges of $620.34. Debtor asserts that because Standard, through the Petition for Executory Process, exercised its right to accelerate the Mortgage and declare the note

---

[13] P-105.

[14] F.R.B.P. 3001(f).

[15] *Matter of O'Connor*, 153 F.3d 258, 260 (5th Cir. 1998) (citation omitted).

[16] *Id.* (citation omitted).

4

immediately due, it is not entitled to late charges after the Petition for Executory Process was filed. Debtor did not provide any evidence or jurisprudence to support its contention.

The Mortgage provides,

> 30. Late Charges. Should borrower fail to pay any Installment of principal and Interest under the Note within 15 days of when due, Borrower agrees to pay Lender a late charge in an amount equal to 5.00000[.]

The proof of claim provides that the monthly principal and interest payments were $295.00, so the monthly late charge is $14.77. The last payment made by Debtor was on January 1, 2012. Standard is claiming 42 months of late charges: February 2012 through August 2015.[17]

The Court agrees with Debtor. Once the Petition for Executory Process was filed, the loan accelerated and late charges were no longer due. The Court will allow late charges of $14.77 per month from January 1, 2012, to June 1, 2012, or $88.62.

### C. Filing Fees, Court Costs, and Taxes

Debtor objects to Standard's claim of $974.00 in filing fees and court costs. Records from the Clerk of Court show that Standard paid $646.44.[18] Standard also introduced evidence showing that it paid $200.00 for a code violation on the Property;[19] $28.00 for cancellation of the lien for the code violation;[20] $13.00 parish fee for cancellation of the lien;[21] and $60.00 for certified copies of

---

[17] The proof of claim states that there are 43 installments due, but the amount of late charges claimed amounts to 42.

[18] Exh. 3.

[19] Exh. 4.

[20] P-104, Exh. E.

[21] *Id.*

5

the mortgage and conveyance records.[22] Therefore, the total proven for filing fees and court costs is $947.44. Standard also paid parish taxes of $339.73 which are also allowed.[23]

### D. Sheriff's Fees

Debtor objects to Standard's claim of $1,700.00 in Sheriff's fees. The *Procés* from the Sheriff shows payment of $840.96,[24] and Standard has stipulated to this amount.[25]

### E. Title Costs

Standard paid $225.00 in abstract title costs.[26] The Court finds that these are an ordinary cost of foreclosure as the lender must give notice of the foreclosure to other interest holders prior to the sale under *Mennonite Board of Missions v. Adams*.[27]

### F. Property Inspections

Standard seeks payment of fifteen (15) property inspections at $21.72 each. Standard did not offer copies of the inspection reports, testimony from the inspector, or testimony from Standard at trial as to its practices regarding inspections.

---

[22] *Id.*

[23] Exh. 2.

[24] Exh. 2.

[25] P-104, ¶ V.

[26] Exh. 5. Southern Abstracts, Inc. billed Standard's counsel $190.00 on June 1, 2012. Then on December 26, 2012, Southern Abstracts, Inc. billed them $35.00 for an update.

[27] *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706 (1983).

The Mortgage provides that Standard "may make reasonable entries upon and inspections of the Property."[28] Also, as this Court found in *Jones v. Wells Fargo*[29]:

> Under Louisiana law, the creditor bears the burden of establishing its debt. Additionally, the fees and charges must be reasonable. The right to seek reimbursement for a charge is not equivalent of an unfettered right to assess the charge against the loan. For example, Louisiana law provides that attorney's fees and charges may be contractually authorized, but even if contractually allowed, their assessment must be reasonable. Thus, both under the terms of the Wells Fargo Note and mortgage and Louisiana law, this Court reviews the charges and fees assessed for reasonableness.[30]

Thus, the Court will examine the property inspection charges for reasonableness.

The Court will allow the claim for the inspections on 3/22/12 and 6/23/12 as being reasonable because they coincide with Debtor's default and the filing of the Petition for Executory Process. The Court will also allow the claim for the inspection dated 1/18/13 as being incident to the sale. The inspection dated 9/19/14 will also be allowed because it was after Debtor filed for bankruptcy relief and alleged the Property was within the bankruptcy estate. The total allowed for the four (4) inspections is $86.88.

### G. Insurance and Escrow

Debtor objects to insurance advances of $2,212.80 claimed by Standard for force placed insurance. Prior to seizure, Debtor paid a yearly hazard insurance premium of $4,435.00 and $1,266.00 for flood insurance. On June 28, 2013, Standard paid "Real Estate Owned" ("REO")

---

[28] Proof of Claim 2, p. 16.

[29] *Jones v. Wells Fargo (In re Jones)*, 366 B.R. 584 (Bankr.E.D.La. 2007).

[30] *Id*. at 597 (citing La. C.C. art. 1831; *Central Progressive Bank v. Bradley*, 502 So.2d 1017 (La. 1987); *Wuertz v. Tobias*, 512 So.2d 1209 (La.App. 5th Cir. 1987); and *City of Baton Rouge v. Stauffer Chemical Company*, 500 So.2d 397 (La. 1987)).

hazard insurance in the amount of $1,383.79 and flood insurance in the amount of $1,452.09. The Court finds these amounts to be reasonable, especially in light of the fact that the REO hazard insurance premiums paid by Standard are less than the premiums previously paid by Debtor.

Debtor objects to the $8,809.23 escrow shortage claimed by Standard. Standard escrows monthly for hazard insurance, flood insurance, and property taxes. Standard's proof of claim shows that the last prepetition payments made by Standard for these charges were:

1) Flood insurance in the amount of $1,452.09 on 6/28/13;

2) Hazard Insurance in the amount of $1,383.79 on 6/28/13; and

3) Property taxes in the amount of $1,203.37 on 12/26/13.[31]

The escrow balance on the petition date was ($6,502.46). Debtor owes past due escrow payments from July 2015 through December 2015 for a total past due of $2,091.30.[32] Postpetition, Standard paid property taxes for 2014 in the amount of $1,203.58. The Court will also add $1,203.58 to the total for property taxes due for 2015. Thus, the escrow balance due is $11,000.92 through December 31, 2015.[33]

---

[31] Proof of Claim 2, p. 6. Subsequent to the Sheriff's Sale, Standard transferred the Property to Federal. Federal does not maintain individual insurance policies on foreclosed assets, so no premiums were paid or charged Debtor from June 2014 until July 2015.

[32] The past due escrow payments were calculated according to Local Rule 3001-1. The monthly amount due for flood insurance is $121.01, $115.32 for hazard insurance, and $100.28 for property taxes. Six (6) months of flood and hazard insurance total $1,417.98. Property taxes were paid postpetition for 2014 and are added for 2015 to the postpetition sums owed. RESPA allows two (2) months of escrow payments to be added to the yearly amount or $673.32. Therefore, the past due prepetition escrow payments are $2,091.30.

[33] Standard also requests $2,212.80 for insurance advances. Insurance advances are already included in the past due escrow.

Going forward, the monthly escrow amount due Standard is $336.61. This amount will be reduced if Debtor or the chapter 7 trustee pay for insurance or property taxes directly.

### H. Litigation Costs and Fees

Standard claims that Debtor owes it $7,600.00 in litigation costs and fees incurred to rescind the foreclosure sale. Debtor objects. As stated above, all attorney's fees must be proven reasonable. Standard introduced time sheets of its counsel for services rendered from February 21, 2014, through April 13, 2015, totaling $7,600.00.[34] The fees requested are for legal work incurred in connection with the Motion to Rescind the Foreclosure Sale and Appeal. Both concern the enforcement of the Mortgage and Note and are, therefore, recoverable. The Court finds the fees to be reasonable.

## III. Conclusion

For the reasons assigned above, the Court finds that Standard has an allowed secured claim in the amount of $31,133.92 in principal and interest through September 9, 2015; attorneys' fees and costs of $8,750.00 through October 2, 2015; fees and costs of $2,528.63 as detailed above; and past due escrow balance of $11,000.92 as of December 31, 2015.[35] A separate Order will be entered in accord with these Reasons.

New Orleans, Louisiana, December 3, 2015.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[34] Exh. 6.

[35] Past due escrow includes $2,091.30 held for future insurance payments not owed until June 2016.